

# IN THE
# TENTH COURT OF APPEALS

## No. 10-16-00067-CV

## IN THE INTEREST OF M.B.T., A CHILD

**From the 18th District Court
Johnson County, Texas
Trial Court No. D201405338**

## MEMORANDUM OPINION

In two issues, appellant, A.L.M., challenges the trial court's order terminating her parental rights to M.B.T. Specifically, A.L.M. contends that the termination of her parental rights is invalid because it is based on a void Affidavit of Relinquishment of Parental Rights and Rule 11 Agreement that contain language prohibited by statute and that the Affidavit of Relinquishment of Parental Rights was signed by A.L.M. under duress, coercion, or fraud. Because we overrule both of A.L.M.'s issues on appeal, we affirm.

# I.      BACKGROUND

Pursuant to the granting of A.L.M.'s motion for bench warrant, on the day of trial, A.L.M. was brought to Johnson County from the Texas Department of Criminal Justice, Woodmen Unit, in Gatesville, Texas, where she was incarcerated. Upon arriving in Johnson County, A.L.M. entered into an agreement with the Texas Department of Family and Protective Services (the "Department") regarding a pending termination petition involving M.B.T. The parties reduced their agreement to a Rule 11 Agreement, which provided the following, in relevant part:

1. [A.L.M.], Respondent Mother, agrees to execute an Affidavit of Voluntary Relinquishment of Parental Rights to the Texas Department of Family and Protective Services. [A.L.M.] is signing this paperwork out of love and affection for [M.B.T.].

2. The Department agrees to look at Elizabeth Petty, first as a potential adoptive placement for the children.

3. The mother shall be allowed to send cards, pictures[,] and letters to the children through a post office box set up by the adoptive placement. . . .

4. The mother shall receive an annual update regarding the children at a post office box set up by the mother. . . . The Department will encourage any adoptive placement to continue providing annual updates to the mother following an adoption.

5. [A.L.M.] shall be allowed to have face to face supervised visitation with the child once placed in the home of the proposed adoptive placement of Ms. Elizabeth Petty. . . .

6. In the event the child is not adopted by Elizabeth Petty, the Department will recommend that any future adoptive placement agree to the terms of this Rule 11 [A]greement. This recommendation from the

Department is not binding on any other possible adoptive placement in the future.

A.L.M., A.L.M.'s attorney, a Department caseworker, the attorney ad litem for M.B.T., Elizabeth Petty, and others signed the Rule 11 Agreement. Thereafter, A.L.M. executed an Affidavit of Relinquishment of Parental Rights to M.B.T. that was signed, notarized, and witnessed.

At the final hearing on the same day, A.L.M. testified that she and her trial counsel talked about her options and the possible outcomes in this case. A.L.M. also acknowledged that she was given the opportunity to confer with her mother about the situation. Later, A.L.M. stated that she wished for the trial court to approve the Rule 11 Agreement and that she thought that this arrangement is the best possible outcome for her and M.B.T.

Subsequently, the trial court signed an order terminating A.L.M.'s parental rights to M.B.T. based on the Affidavit of Relinquishment of Parental Rights that A.L.M. had signed. This appeal followed.

## II. THE VALIDITY OF THE AFFIDAVIT OF RELINQUISHMENT OF PARENTAL RIGHTS AND RULE 11 AGREEMENT

In her first issue, A.L.M. asserts that the Affidavit of Relinquishment of Parental Rights and Rule 11 Agreement contain language prohibited by section 161.103(h) of the Texas Family Code and, thus, are void.

Section 161.103(h) of the Texas Family Code, provides that an Affidavit of Relinquishment of Parental Rights "may not contain terms for limited post-termination contact between the child and the parent whose parental rights are to be relinquished as a condition of the relinquishment of parental rights." TEX. FAM. CODE ANN. § 161.103(h) (West Supp. 2015). On appeal, A.L.M. alleges that the "Rule 11 Agreement contains terms for limited post-termination contact between the child and the parent whose parental rights are to be relinquished as a condition of the relinquishment of parental rights." In particular, A.L.M. directs us to language in the Rule 11 Agreement allowing A.L.M. to send cards, pictures, and letters to M.B.T., as well as receive annual updates and supervised visitations with M.B.T. in the event that Petty adopted M.B.T.

However, to preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling, if they are not apparent from the context of the request, objection, or motion. TEX. R. APP. P. 33.1(a); *see In re D.E.H.*, 301 S.W.3d 825, 827 (Tex. App.—Fort Worth 2009, pet. denied). "If a party fails to do this, error is not preserved, and the complaint is waived." *In re D.E.H.*, 301 S.W.3d at 827 (citation omitted). "The complaint on appeal must be the same as that presented in the trial court." *Id.* (citations omitted). "An appellate court cannot reverse based on a complaint not raised in the trial court." *Id.* at 828 (citation omitted). "'[A]llowing appellate review of unpreserved error would undermine the Legislature's intent that cases terminating parental rights be expeditiously

resolved.'" *Id.* (quoting *In re L.M.I.*, 119 S.W.3d 707, 711 (Tex. 2003), *cert. denied*, 541 U.S. 1043, 124 S. Ct. 2175, 158 L. Ed. 2d 733 (2004)).

In the instant case, A.L.M. raises her complaint about the Affidavit of Relinquishment of Parental Rights and the Rule 11 Agreement for the first time on appeal. She did not object or file any motions in the trial court raising this complaint. Accordingly, we conclude that she has not preserved this complaint for appellate review. *See* TEX. R. APP. P. 33.1(a); *see also In re D.E.H.*, 301 S.W.3d at 827-28.

And even if A.L.M. had preserved this complaint for review, section 161.211(c) of the Texas Family Code provides that: "A direct or collateral attack on an order terminating parental rights based on an unrevoked affidavit of relinquishment of parental rights or affidavit of waiver of interest in a child is limited to issues relating to fraud, duress, or coercion in the execution of the affidavit." TEX. FAM. CODE ANN. § 161.211(c) (West 2014); *see Moore v. Brown*, 408 S.W.3d 423, 438 (Tex. App.—Austin 2013, pet. denied) ("Consequently, subsection (c)'s limitation of "direct or collateral attack[s] on an order terminating parental rights based on an unrevoked affidavit of relinquishment of parental rights" to "issues relating to fraud, duress, or coercion in the execution of this affidavit" proscribes challenges based solely on a complaint that the affidavit violated one of section 161.103's requirements."); *see also In re A.H.*, No. 09-14-00291-CV, 2014 Tex. App. LEXIS 13549, at *11 (Tex. App.—Beaumont Sept. 15, 2014, no pet.) (mem. op.) ("Therefore, challenges to deficiencies in the affidavits [under section

161.103] are precluded under section 161.211(c)." (citing *Moore*, 408 S.W.3d at 438; *In re C.O.G.*, No. 13-12-00577-CV, 2013 Tex. App. LEXIS 14928, at **11-13 (Tex. App.—Corpus Christi Dec. 12, 2013, no pet.) (mem. op.))).  Accordingly, in light of section 161.211(c) and the circumstances in this case, A.L.M. is limited to attacking the trial court's termination order on issues relating to fraud, duress, or coercion.  *See* TEX. FAM. CODE ANN. § 161.211(c); *Moore*, 408 S.W.3d at 438; *see also In re A.H.*, 2014 Tex. App. LEXIS 13549, at *11; *In re C.O.G.*, 2013 Tex. App. LEXIS 14928, at **11-13.  Therefore, based on the foregoing, we overrule A.L.M.'s first issue.

### III.    DID A.L.M. SIGN THE AFFIDAVIT OF RELINQUISHMENT UNDER DURESS, COERCION, OR FRAUD?

In her second issue, A.L.M. argues that she signed the Affidavit of Relinquishment of Parental Rights under duress and coercion because she was purportedly told that she would never see M.B.T. again if she did not sign the affidavit and accompanying Rule 11 Agreement, and because she later learned that she would not see M.B.T. again if a person not a party to the Rule 11 Agreement adopted M.B.T.

Once again, we note that a party must present a timely request, objection, or motion stating the specific grounds for the desired ruling to preserve a complaint for our review and a failure to do this results in the waiver of the complaint.  *See* TEX. R. APP. P. 33.1(a); *see also In re D.E.H.*, 301 S.W.3d at 827.  Because A.L.M. did not raise this complaint in the trial court via a timely request, objection, or motion, we cannot say that this issue

has been preserved for our review. *See* TEX. R. APP. P. 33.1(a); *see also In re D.E.H.*, 301 S.W.3d at 827.

However, even if she had preserved this complaint, it lacks merit. Once the Department demonstrated by clear and convincing evidence that A.L.M. executed the Affidavit of Relinquishment of Parental Rights pursuant to section 161.103, the burden shifted to A.L.M. to establish by a preponderance of the evidence that the affidavit was executed as a result of fraud, duress, or coercion. *See In re K.D.*, 471 S.W.3d 147, 156 (Tex. App.—Texarkana 2015, no pet.) (citing *In re R.B.*, 225 S.W.3d 798, 804 (Tex. App.—Fort Worth 2007, pet. denied)).

> Coercion occurs if someone is compelled to perform an act by force or threat. . . . Duress occurs when, due to some kind of threat, a person is incapable of exercising her free agency and unable to withhold consent. . . . Fraud may be committed through active misrepresentation or passive silence and is an act, omission, or concealment in breach of a legal duty, trust, or confidence justly imposed, when the breach causes injury to another or the taking of an undue or unconscientious advantage. . . . A misrepresentation is a falsehood or untruth with the intent to deceive.

*In re D.E.H.*, 301 S.W.3d at 828-29 (citations omitted).

Other than A.L.M.'s own assertions on appeal, the record contains no evidence of fraud, coercion, or duress in the signing of the Affidavit of Relinquishment of Parental Rights. In fact, A.L.M. testified at trial that she was given an opportunity to discuss her options with her trial counsel and her mother. Furthermore, A.L.M. requested that the trial court take notice of the Rule 11 Agreement and approve the agreement of the parties.

The fact that a parent felt pressured or was emotionally upset and under stress when signing the affidavit of relinquishment does not render the affidavit involuntary. *See In re D.E.H.*, 301 S.W.3d at 830 (holding that the mother's showing that her uncertainty, confusion, and anguish over her limited options created a feeling that she was pressured into signing the affidavit did not demonstrate that she executed the affidavit as a result of coercion, fraud, or duress); *In re R.B.*, 225 S.W.3d at 805-06 (stating that the parents acted voluntarily and without duress, fraud, or coercion in executing their affidavits even though the evidence supported that they were emotionally distressed and had been placed under "considerable pressure"); *In re N.P.T.*, 169 S.W.3d 677, 679-81 (Tex. App.—Dallas 2005, pet. denied) (concluding that a father acted voluntarily when he signed an affidavit of relinquishment as part of a plea bargain agreement, even though the evidence showed that the father was under pressure to make a decision); *see also Lumbis v. Tex. Dep't of Protective & Regulatory Servs.*, 65 S.W.3d 844, 851 (Tex. App.—Austin 2002, pet. denied) (indicating that the fact that a parent is emotionally upset when signing the affidavit of relinquishment does not render the affidavit involuntary). Therefore, even assuming A.L.M. had preserved this issue, we cannot say she satisfied her burden of proving by a preponderance of the evidence that the Affidavit of Relinquishment of Parental Rights was executed as a result of fraud, duress, or coercion. *See In re K.D.*, 471 S.W.3d at 156; *see also In re R.B.*, 225 S.W.3d at 804. We overrule A.L.M.'s second issue.

**IV. CONCLUSION**

Having overruled both of A.L.M.'s issues on appeal, we affirm the judgment of the trial court.


AL SCOGGINS
Justice

Before Chief Justice Gray,
      Justice Davis, and
      Justice Scoggins
Affirmed
(Chief Justice Gray concurring)*
Opinion delivered and filed July 13, 2016
[CV06]

*(Chief Justice Gray concurs in the judgment to the extent it affirms the trial court's judgment. A separate opinion will not issue.)

